## THE STATE OF KANSAS v. ROBERT MITCHELL.
### No. 313.

1. INTOXICATING LIQUORS—*Variance in Name.* There is abundant evidence in this case tending to prove that the defendant sold intoxicating liquors to "Edward Herald" instead of "Edwin Herald," and to establish the fact that "Edward" is intended when the word "Edwin" is used.

2. ——— *Proper Instructions.* The record in this case has been carefully examined, and the instructions given by the court correctly state the law applicable to the issues and the facts which the evidence tends to establish.

MEMORANDUM.—Appeal from Osage district court; WILLIAM THOMSON, judge. Prosecution for illegal sales of intoxicating liquors. The defendant, Robert Mitchell, was convicted. He brings the case to this court. Affirmed. The opinion herein, filed October 7, 1896, states the material facts.

*Ellis Lewis*, for appellant.

*F. B. Dawes*, attorney general, and *Geo. M. Wolf*, county attorney, for The State.

The opinion of the court was delivered by

DENNISON, J.: This prosecution was begun before a justice of the peace in Osage county, against Robert Mitchell, charging him, in two counts, with unlaw-

fully selling intoxicating liquors.    The case was tried
by the justice with a jury, and a verdict and judg-
ment of guilty rendered.    The case was appealed by
the defendant to the district court, and, at its June,
1895, term, was tried by said court with a jury, and a
verdict of guilty returned, and judgment rendered
thereon.    A motion for a new trial was overruled,
and the defendant appeals to this court for a review
of the errors alleged to have been committed in the
district court.    At the close of the plaintiff's evidence
the county attorney was required to elect upon which
sales he would rely for a conviction, and he made the
following :  (1) On the first sale of beer to Edward
Herald, on or about the middle of January, 1895 ;
·(2) on the first sale of beer to Edward Herald after
one Charles Herald had come into the defendant's
place of business, on the 13th day of February, 1895.

The defendant contends that all the testimony
proves the sales to have been made to ''Edwin Her-
ald '' instead of to '' Edward Herald.''   The complaint
was subscribed and sworn to by Edward Herald.   The
first witness called by the state was Edward Herald.
He testified that he bought intoxicating liquors of
Mitchell about the middle of January, 1895, and on
the 13th day of February, 1895.   He also, on cross-
examination, testified as follows :   '' Ques. You have
a brother named Edwin?   Ans. No, sir ; I am the
man, myself.   Q. Well, your name is Edward?
A. Yes, sir.   Q. You have no brother named Ed-
win?   A. No, sir.''   The only time Edward Herald
is referred to as Edwin is in the examination of
Charles Herald, who refers to him once as brother
Edwin.   Whether or not this is an error of the sten-
ographer does not appear.   James Cann testified that
he knew Edward Herald, and was in Mitchell's place

of business with him but once, and that was in January or February, 1895, and his description of the transactions was similar to those described by Edward Herald. There is abundant evidence tending to prove that Mitchell sold to Edward Herald on or about January 15, 1895, and February 13, 1895.

The other error complained of is that the court erred in giving the thirteenth instruction, which reads as follows:

"There has been some testimony introduced tending to show that the defendant was not in business at the time at which it is claimed he committed the offenses charged. This, however, even if proved, would not warrant you in finding the defendant not guilty if the evidence otherwise should convince you beyond a reasonable doubt. But if it is a fact that he was not in business at that time, then such fact is a circumstance which you should consider with all the other evidence to enable you to determine his guilt or innocence of the offenses charged, and each of them."

We see nothing wrong in this instruction. The defendant is charged with unlawfully selling intoxicating liquors. He is not charged with running a place as a nuisance. If he sold unlawfully he is guilty, whether he ran a place of business or not. The defendant contends that, as the county attorney relied for a conviction upon the second count upon a sale "after one Charles Herald had come into the defendant's place of business," it must be shown that he was in business at that time, or a conviction could not be sustained, and therefore that the thirteenth instruction was wrong.

The eleventh instruction given by the court reads as follows:

"You are further instructed that the state has elected to rely for a conviction of the defendant of the

charge contained in the second count of the complaint upon an alleged sale of beer to Edward Herald after one Charles Herald had come into the defendant's place of business on the 13th day of February, 1895, and if you believe from the evidence, beyond a reasonable doubt, that the defendant did sell to the said Edward Herald beer on said occasion, being the first sale at said time, and that said beer was intoxicating liquor, and that the defendant at the time had no permit to sell intoxicating liquors as provided by law, and this sale took place at Osage county and state of Kansas, you will find the defendant guilty as charged in the second count of said complaint; otherwise you shall acquit the defendant of said charge.''

The term ''defendant's place of business,'' in the election of the county attorney, had relation to the first sale to Edward Herald after Charles Herald had joined the party. It was used to fix the time of the sale of February 13, 1895. Edward Herald had testified that he had bought and paid for beer of Mitchell, in a building which he had charge of and was running, on the north side of Main street, in Carbondale, Osage county, Kan., and, among others, that his brother Charles was present at the time he made the the purchase. Charles Herald testified that he wanted to find Jack Urey, and that he went into Mitchell's place, and that Urey and Steffe and Ed. were there, and that Mitchell was there, making five in all, including the witness, and that Mitchell sold them beer four times, and that once or twice he saw his brother pay for the beer. During the introduction of the testimony the place where the liquor is alleged to have been sold was referred to repeatedly by the attorneys upon both sides, and by the witnesses, by such names as ''Mitchell's,'' ''Mitchell's place of business,'' and ''The Iron Clad.'' The defense attempted to show that Mitchell had ceased doing

business there about the 5th or 6th of January, 1895. There is no contention that the place was not Mitchell's place of business prior to that time.   The term "defendant's place of business," as used in the county attorney's election, was a descriptive term, used only to establish the time of the sale.   The time was "after one-Charles Herald had come."   Where?   Into the place the attorneys and witnesses had all described as "Mitchell's place of business;" into the building where the liquors were alleged to have been sold and drunk.   The instruction complained of made no mention of defendant's place of business as a descriptive term, but only as to the fact of whether the defendant was engaged in business at the time he is alleged to have made the unlawful sales.   We think the instruction was not erroneous.

The judgment of the district court is affirmed.

All the Judges concurring.